UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAESAR DEPACO,<br><br>                    Plaintiff,<br><br>v.<br><br>COFINA MEDIA, SA, REVISTA SABADO, ALEXANDRE JOSE RIBEIRO MALHADO, EDUARDO DAMASO, JOHN DOES 1 through 10, said names being fictitious and unknown persons, and ABC CORPORATIONS 1 through 10, said names being fictious and unknown entities,<br><br>                    Defendants. | Civil Action No.: 3:21-cv-14409- AET-TJB<br><br>Hon. Anne E. Thompson |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

>                                          Michael T. Madaio, Esq.
>                                          N.J. Bar Number: 070752013
>                                          **HABBA MADAIO & ASSOCIATES LLP**
>                                          1430 U.S. Highway 206, Suite 240
>                                           Bedminster, NJ 07921
>                                          Phone: (908) 869-1188
>                                          Fax: (908) 869-1189
>                                          Email: mmadaio@habbalaw.com
>                                          *Counsel for Plaintiff, Caesar DePaco*

# **TABLE OF CONTENTS**

                                                           **Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..............................................................................................................................1

    I.    Defendants are Properly Subject to Personal Jurisdiction in New Jersey ............................3

    II.   Defendants' Argument for Dismissal Based on Forum Non Conveniens Fails ..................8

    III.  Plaintiff's Claim of Tortious Interference is Properly Pleaded and Should Not Be
            Dismissed.......................................................................................................................10

CONCLUSION.........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Austar Int'l, Ltd. v. Austapharma LLC,*

    425 F. Supp. 3d 336, 360 (D.N.J. 2019) ................................................................................4

*Burger King Corp. v. Rudzewicz,*

    471 U.S. 462, 476 (1985).................................................................................................3, 4

*Calder v. Jones,*

    465 U.S at 789-90 (1984)..........................................................................................3, 4, 5

*Carteret Sav. Bank, FA v. Shushan,*

    954 F.2d 141, 146 (3d Cir. 1992).........................................................................................1

*Churchill v. State, 876 A.2d 311,*

    319 (N.J. Super. Ct. App. Div. 2005) ..................................................................................7

*D'Agostino v. Johnson & Johnson, Inc.,*

    115 N.J. 491, 494 n.1 (1989) ............................................................................................ 10

*Daimler AG v. Bauman,*

    134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014).............................................................2, 3

*Decker v. Princeton Packet, Inc.,*

    116 N.J. 418 (1989) ............................................................................................................4

*Defense Distributed,*

    2020 U.S. App. Lexis 26429 at *18-19 ...............................................................................5

*Demetro v. Nat'l Ass'n of Bunco Investigations,*

    No. 14-6521, 2017 U.S. Dist. LEXIS 145061, *18-19, 2017 WL 3923290 (D.N.J. Sept. 7, 2017) ....................................................................................................................................3

*Haase v. State,*

    53 N.J.L. 34, 36-37 (Sup. Ct. 1890)...................................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*

    466 U.S. 408, 414-15 & n.9 (1984) ................................................................................2, 3

*Ilusorio v. Ilusorio-Bildner,*

    103 F. Supp. 2d 672 (S.D.N.Y. 2000) ................................................................................ 9

*IMO Indus., Inc. v. Kiekert, AG,*

    155 F.3d 254, 259 (3d Cir. 1998) .......................................................................................2

*Keeton v. Hustler Magazine, Inc.,*

    465 U.S. 770, 772 (1984) ...........................................................................................3, 4, 6

*Kotlikoff v. The Community News,*

    89 N.J. 62, 67 (1982) .........................................................................................................4

*Kurzke v. Nissan Motor Corp.,*

    164 N.J.159, 168 (2000) ..................................................................................................10

*Maressa v. New Jersey Monthly,*

    89 N.J. 176, 190, cert. denied, 459 U.S. 907, 103 S. Ct. 211, 71 L. Ed. 2d 169 (1982)......4

*Marten v. Godwin,*

    499 F.3d 290, 297 (3d Cir. 2007)......................................................................................4

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,*

    107 F.3d 1026, 1042 (3d Cir. 1997) ..................................................................................7

*Mellon Bank (East) PSFS, National Ass'n v. Farino,*

    960 F.2d 1217, 1223 (3d Cir. 1992)...................................................................................8

*Metcalfe v. Renaissance Marine, Inc.,*

    566 F.3d 324, 330-31 (3d Cir. 2009) .................................................................................2

*Miller Yacht Sales, Inc. v. Smith,*

    384 F.3d 93, 97 (3d Cir. 2004)..................................................................................2

*Mosler v. Whelan,*

    28 N.J. 397, 404-05 (1958) .......................................................................................4

*O'Connor v. Sandy Lane Hotel Co., Ltd.,*

    496 F.3d 312, 321 (3d Cir. 2007) ..............................................................................3

*Pinker v. Roche Holdings Ltd.,*

    292 F.3d 361, 368 (3d Cir. 2002)..........................................................................2, 7

*Printing Mart-Morristown v. Sharp Elecs. Corp.,*

    116 N.J. 739, 765 (1989) ..........................................................................................4

*Romaine v. Kallinger,*

    109 N.J. 282, 290 (1988) ..........................................................................................4

*Senju Pharmaceutical Co., Ltd. v. Metrics, Inc.,*

    96 F. Supp. 3d 428, 435 (D.N.J. 2015) ....................................................................2

*Toys "R" Us, Inc. v. Step Two, S.A.,*

    318 F.3d 446, 457 (3d Cir. 2003).....................................................................2, 7, 8

*Walden v. Fiore,*

    571 U.S. 277, 287-88 (2014) ....................................................................................5

**Rules and Statutes**

Federal Rule of Civil Procedure 12(b)(2) ...........................................................................1

Fed. R. Civ. P. 4(k) .............................................................................................................2

Restatement (Second) of Torts § 577A...............................................................................7

Rule 12(b)(2).......................................................................................................................1

N.J. Ct. R. 4:4-4(c)..............................................................................................................2

## PRELIMINARY STATEMENT

Defendants maintain that the defamatory article at issue was published and disseminated in Portugal and was not published, sold, or otherwise circulated in New Jersey and thus they are not subject to personal jurisdiction in New Jersey. Despite Defendants' contention, the Court has jurisdiction over Defendants and venue is proper in this District. The Defendants committed intentional torts, directly targeting Plaintiff, a resident of New Jersey. This argument conveniently overlooks the fact that New Jersey is the state with the fourth largest population of Portuguese Americans  See  https://www.worldatlas.com/articles/states-with-the-largest-populations-of-portuguese-americans (last visited Feb. 18, 2022). Furthermore, it is estimated that in 2019 there were 77,621 Portuguese Americans residing in New Jersey. See https://en.wikipedia.org/wiki/Portuguese Americans (last visited Feb. 19, 2022). Given such a substantial base for readership, it is submitted that in addition to the New Jersey residents who read defendants' publication online, discovery will show that their publication is sent from Portugal to New Jersey residents who have subscriptions and is delivered to newsstands in this state.

Consequently, the defamatory article at issue directed to Plaintiff, a New Jersey resident who is the CEO of Summit Nutritional International LLC, headquartered in Lebanon, New Jersey, was undoubtedly read by New Jersey residents online and in print.

## ARGUMENT

### I. Legal Standard

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). Plaintiff has the burden to prove facts sufficient to establish personal jurisdiction by a preponderance of the evidence. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Under Rule 12(b)(2), "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction

and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); see Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

Once a defendant files a motion challenging personal jurisdiction, the plaintiff bears the burden of proving that the exercise of jurisdiction is proper. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330-31 (3d Cir. 2009). On a motion challenging personal jurisdiction, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002). The plaintiff "need only establish a prima facie case of personal jurisdiction" in order to defeat the motion. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

Courts in the Third Circuit employ a two-step inquiry to determine whether personal jurisdiction exists over a defendant. IMO Indus., Inc. v. Kiekert, AG, 155 F.3d 254, 259 (3d Cir. 1998). That test involves application of the forum state's long-arm statute to determine whether it permits the exercise of personal jurisdiction and, if so, an evaluation of whether the exercise of jurisdiction is consistent with the principles of due process under the United States Constitution. Id.; Fed. R. Civ. P. 4(k). In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Miller Yacht, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)).

Personal jurisdiction may be either general or specific. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). A court may exercise general jurisdiction over a non-resident defendant where "the defendant's contacts with the forum are so 'continuous and systematic' as to render them essentially 'at home' in the forum state." Senju Pharmaceutical Co., Ltd. v. Metrics, Inc., 96 F. Supp. 3d 428, 435 (D.N.J. 2015) (citing Daimler

2

AG v. Bauman, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014)). "In contrast to general jurisdiction, specific jurisdiction relies on the defendant's forum-related activities that give rise to the plaintiff's claims." Demetro v. Nat'l Ass'n of Bunco Investigations, No. 14-6521, 2017 U.S. Dist. LEXIS 145061, *18-19, 2017 WL 3923290 (D.N.J. Sept. 7, 2017) (citing Helicopteros, 466 U.S. at 413-14). In the Third Circuit, ascertaining general and specific jurisdiction involves distinct inquiries:

> Our cases, however, have always treated general and specific jurisdiction as analytically distinct categories, not two points on a sliding scale. If the defendant "maintain[s] continuous and substantial forum affiliations," then general jurisdiction exists. If the defendant's contacts fall short of that standard, then at least one contact must give rise or relate to the plaintiff's claim. These categories constitute "two distinct theories," and our cases recognize the importance of separate analysis.
>
> O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 321 (3d Cir. 2007) (citations omitted).

Plaintiff does not contend that that general jurisdiction exists over the Defendants in New Jersey. Specific jurisdiction, however, does exist in this case, as detailed below.

## II.     Defendants are Properly Subject to Personal Jurisdiction in New Jersey

Whether a defendant has sufficient forum related contacts to confer jurisdiction is a fact-specific inquiry. O'Connor, 496 F.3d at 323. The test to determine whether forum contacts satisfy the requirements for jurisdiction depends on the nature of the allegations of the case. As a general matter, in cases involving intentional torts, the effects test set forth in Calder v. Jones, 465 U.S. 783 (1984) applies. See O'Connor, 496 F.3d 317 n2; Austar Int'l, Ltd. v. Austapharma LLC, 425 F. Supp. 3d 336, 360 (D.N.J. 2019)

Physical presence in the state while committing the acts that are the subject of the lawsuit is not required to establish specific jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). "Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum." Demetro, 2017 U.S. Dist. LEXIS 145061 at *18-19 (citing Keeton v. Hustler

3

Magazine, Inc., 465 U.S. 770, 780 (1984)). A single act may satisfy the minimum contacts test if it creates a substantial connection with the forum. Burger King, 471 U.S. at 476 n.18.

Under the Calder test, a court has jurisdiction over a nonresident defendant who commits an intentional tort outside the forum that has an effect upon the plaintiff within the forum, if the following conditions are met: (A) the defendant committed an intentional tort; (B) plaintiff must have felt the brunt of the harm caused by that tort in the forum such that the forum was the focal point of the harm suffered by the plaintiff as a result of that tort; and (C) defendant "expressly aimed" his tortious conduct at the forum. Austar, 425 F. Supp. 2d at 360-61 citing (Calder, 465 U.S at 789-90; IMO Indus., 155 F.3d at 266). The effects felt in the forum under this test may support jurisdiction even where a defendant's other forum contacts are minimal. Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007).

It is indisputable that defamation constitutes an intentional tort. New Jersey defamation law states, "Defamation imposes liability for publication of false statements that injure the reputation of another." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 765 (1989) (citing Maressa v. New Jersey Monthly, 89 N.J. 176, 190, cert. denied, 459 U.S. 907, 103 S. Ct. 211, 71 L. Ed. 2d 169 (1982)). Thus, the threshold issue in any defamation case is whether the statement at issue is reasonably susceptible of a defamatory meaning. Decker v. Princeton Packet, Inc., 116 N.J. 418 (1989); see Romaine v. Kallinger, 109 N.J. 282, 290 (1988) (citing Kotlikoff v. The Community News, 89 N.J. 62, 67 (1982)); Mosler v. Whelan, 28 N.J. 397, 404-05 (1958).

Specifically alleged in the Complaint, are numerous false, misleading and defamatory statements published by Defendants about Plaintiff, including accusing him of committing a crime by stating that he has engaged in and/or directed others to engage in illegal means of intimidation and coercion to collect payments. (Complaint at ¶¶13 and 36.) There can be no other interpretation

4

of such statements than that they have defamatory meanings, which, in and of itself, is defamation per se.

The second and third prongs are also satisfied here. Where a defendant has intentionally aimed its tortious conduct at the forum, the foreseeable effects of that conduct are felt in the forum, and the plaintiff bears the brunt of the harm in the forum, then the defendant's contacts with the forum are sufficient to confer jurisdiction. See Defense Distributed, 2020 U.S. App. Lexis 26429 at *18-19 (citing Calder, 465 U.S. at 784-85 at 788-89; Walden v. Fiore, 571 U.S. 277, 287-88 (2014)).

Defendant strains to argue that the effects of its tortious conduct were not aimed at this forum. Plaintiff is a resident of New Jersey and Defendant published the defamatory information while being fully aware of Plaintiff's residence. Furthermore, as stated above, New Jersey is the state with the fourth largest population of Portuguese-Americans See https://www.worldatlas.com/articles/states-with-the-largest-populations-of-portuguese-americans (last visited Feb. 18, 2022). Furthermore, it is estimated that in 2019 there were 77,621 Portuguese-Americans residing in New Jersey. See https://en.wikipedia.org/wiki/ Portuguese_Americans (last visited Feb. 19, 2022). Given such a substantial base for readership, it is submitted that in addition to the New Jersey residents who read defendants' publication online, discovery will show that their publication is sent from Portugal to New Jersey residents who have subscriptions and is delivered to newsstands in this state.

Circulation is the source of life to the magazine publisher. The readers in New Jersey are a source of revenue for Defendants and thereby link Defendants' publication to this State.

The facts in Calder v. Jones, 465 U.S. 783 (1984) are closely analogous to this case. There, plaintiff, a professional entertainer thing and working in California and whose television career

5

was centered there, brought suit in California Superior Court, claiming that she had been libeled in an article written and edited by defendants in Florida and published in the National Enquirer, a national magazine having its largest circulation in California. Defendants, both residents of Florida, were served with process by mail in Florida, and, on special appearances, moved to quash the service of process for lack of personal jurisdiction. The Superior Court granted the motion on the ground that First Amendment concerns weighed against an assertion of jurisdiction otherwise proper under the Due Process Clause of the Fourteenth Amendment. The California Court of Appeal reversed, holding that a valid basis for jurisdiction existed on the theory that petitioners intended to, and did, cause tortious injury to respondent in California. The Supreme Court held that California could assert jurisdiction over a Florida author and editor solely on the grounds that they had intentionally written and edited an article that they knew would injure the plaintiff who resided in California. Id. at 788-791. Furthermore, California is the focal point both of the allegedly libelous article and of the harm suffered and thus jurisdiction over defendants was proper in California based on the "effects" of their Florida conduct in California. Id. at 788-791. The Court also rejected the need for a greater showing of contacts for first amendment considerations, reasoning that the first amendment was better considered during trial on the merits. Id. at 790.

In Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 772 (1984), which was decided concurrently with Calder, the Supreme Court reversed the United States Court of Appeals for the First Circuit and held that Hustler's regular circulation of its magazine in New Hampshire of "10,000 to 15,000 copies" of its magazine - a very small percentage of its total publication and a number far less than the National Inquirers circulation in California in Calder - was sufficient to maintain that Hustler Magazine had sufficient minimum contacts with New Hampshire, such that the state could exercise jurisdiction over the magazine without conflicting with the constitutional

6

requirements of due process. There, neither the plaintiff nor the defendant resided in New Hampshire. Complicating the matter was the fact that the action was a suit for nationwide damages under the single publication rule pursuant to which a plaintiff may recover all damages from the publication of a single issue of a magazine, book, or newspaper in one suit. See Restatement (Second) of Torts § 577A. The Court concluded that Hustler's contacts, coupled with the state's interest in redressing torts occurring within its borders and in cooperating with other states through the single publication rule, were sufficient to support the multistate suit. See Churchill v. State, 876 A.2d 311, 319 (N.J. Super. Ct. App .Div. 2005) (New Jersey Superior Court has held that the single publication rule applies to Internet publications).

Here, Defendant's published their defamatory magazine article on the Internet and in their magazine knowing and intending that it would be read in New Jersey where they knew plaintiff resided. Consequently, pursuant to Calder and Keeton Defendants should be subject to personal jurisdiction in New Jersey.

Although based on Calder and Keeton there is clearly enough for this Court to deny Defendants' motion, should the Court consider otherwise, it is respectfully requested that the Court deny Defendants' motion to dismiss for lack of personal jurisdiction without prejudice, and Plaintiff be granted jurisdictional discovery into the relationship between Defendants and New Jersey with the scope to be set by the Court.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, [Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)], courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" Toys "R"Us, 318 F.3d at 456 (quoting Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)). "If a plaintiff presents factual allegations that

7

suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." Toys "R" Us, 318 F.3d at 456 (quoting Mellon Bank (East) PSFS, National Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)). "Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction." Toys "R" Us, 318 F.3d at 456.

In Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003), plaintiff, a New Jersey corporation, brought the action against defendant, a Spanish Corporation, alleging that defendant had used it Internet websites to engage in trademark infringement, unfair competition, misuse of the trademark notice symbol, and unlawful "cybersquatting. The Third Circuit reversed the decision of the District Court dismissing the complaint for lack of personal jurisdiction and remanded the matter for limited jurisdictional discovery relating to defendant's business activities in the United States for reconsideration of personal jurisdiction with the benefit of the product of that discovery. Id. at 448.

Accordingly, jurisdictional discovery should be allowed as to non-Internet minimum contacts existing between Defendants and New Jersey to establish personal jurisdiction. See Toys 'R' Us, 318 F.3d at 456 (3d Cir. 2003) (reversing lower court's denial of jurisdictional discovery to allow exploration of non-Internet contacts to provide the "something more" needed to exercise personal jurisdiction). Such discovery would show how many of the more than 77,000 Portuguese American residents of New Jersey subscribed to Plaintiffs' magazine.

**III.    Defendants' Argument for Dismissal Based on Forum Non Conveniens Fails**

While Plaintiff may be a citizen of Portugal as Defendants note, he is a resident of New Jersey and has been for years. Plaintiff is a member of the Portuguese American community in

8

New Jersey and it is among the members of that community that Defendants' defamation has tarnished Plaintiff's reputation. The numerous witnesses to Defendants' defamation who reside in New Jersey clearly outnumber Defendants. The inconvenience these individuals who are merely witnesses and not perpetrators of the defamation to have to be involved in a proceeding in Portugal clearly outweighs the inconvenience of the Defendants to answer for their defamatory statements in New Jersey.

Contrary Defendants assertion that Ilusorio v. Ilusorio-Bildner, 103 F. Supp. 2d 672 (S.D.N.Y. 2000), bears striking parallels to the present case, there are significant facts present here which distinguish this matter from that case apart from the fact that it is a New York case: (1) the publication of the defamatory article was published on the Internet and in magazines sent to New Jersey, and directed to Plaintiff, a resident of New Jersey; (2) since this Court has personal jurisdiction over Defendants for defamation in New Jersey, the law of New Jersey should apply; (3) the evidence and witnesses regarding the impact of Defendants' defamation on Plaintiff are all in New Jersey; and (4) the "focal point" of the litigation is New Jersey.

As for Defendants' contention that defamatory statements made in Portuguese are not defamatory in New Jersey, they maintain that if slander be spoken in a foreign tongue, it is not enough to charge an utterance within the hearing of others, unless it be also alleged that the hearers were acquainted with the foreign language. Def. Memo at 15. That is precisely what is being alleged as the hearers or, in this case, readers constitute Portuguese Americans living in New Jersey who are obviously acquainted with Portuguese and thus understand the defamation. See Haase v. State, 53 N.J.L. 34, 36-37 (Sup. Ct. 1890). Furthermore, beyond the Portuguese American community, anyone opening Defendant's website, https://www.sabado.pt/, on Microsoft Edge and Google Chrome, can have it translated into English at the push of a button.

Consistent with the analysis of the benefit of jurisdictional discovery with regard to factors pertaining to personal jurisdiction, the New Jersey Supreme Court has long recognized that a decision on forum non conveniens grounds is "enhanced" when it is "reserved until discovery has proceeded sufficiently to enable the [trial] court to make a better-informed assessment of the private- and public-interests." D'Agostino v. Johnson & Johnson, Inc., 115 N.J. 491, 494 n.1 (1989). The Court has stated that "[a]s a general rule, a motion for dismissal due to forum non conveniens should not be heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by the plaintiff." Kurzke v. Nissan Motor Corp., 164 N.J.159, 168 (2000).

Accordingly, were this Court to consider granting Defendants' motion to dismiss on the grounds of forum non conveniens at this initial stage of the litigation, Plaintiff respectfully requests that this Court direct the parties to engage in jurisdictional discovery.

## IV. **Plaintiff's Claim of Tortious Interference is Properly Pleaded and Should Not Be Dismissed**

Defendants focus their argument seeking dismissal of Plaintiff's tortious interference claim solely on Plaintiff having been dismissed from his positions as Honorary Consul of Portugal and Cape Verde. In doing so, Defendants have failed to address the allegation that they acted maliciously and in bad faith in disseminating their false and defamatory statements and intentionally and tortiously interfered with Plaintiff's business relationships (Complaint ¶54) in connection with Plaintiff's role as CEO of Summit Nutritional International LLC (Complaint ¶49), headquartered in Lebanon, New Jersey. Since its creation in 2001, it has been a leader in the manufacture and delivery of American-made nutritional raw materials in bulk: Chondroitin Sulfate (a proven natural substance for the relief of osteoarthritis), Botanical Powders, Powder Extracts as

well as Vitamins and Nutritional Supplements. See http://summitnutritionals.com/home/. Consequently, Defendants have not provided a reason for the dismissal of Plaintiff's tortious interference claim.

Nonetheless, should the Court consider granting Defendants' motion to dismiss Plaintiff's tortious interference claim, Plaintiff respectfully requests that this Court direct the parties to engage in jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, Plaintiff, Caesar DePaco, respectfully requests this Court deny Defendants' motion in its entirety or, in the alternative, direct the parties to engage in jurisdictional discovery.

Respectfully submitted,

Dated: February 22, 2022
Bedminster, New Jersey

Michael T. Madaio, Esq.
N.J. Bar Number: 070752013
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, NJ 07921
Phone: (908) 869-1188
Fax: (908) 869-1189
Email: mmadaio@habbalaw.com
*Counsel for Plaintiff, Caesar DePaco*

11