**\*NOT FOR PUBLICATON\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAESAR DEPACO,<br><br>          Plaintiff,<br><br>v.<br><br>COFINA MEDIA, SA, REVISTA SABADO, ALEXANDRE JOSE RIBEIRO MALHADO, EDUARDO DAMASO, JOHN DOES 1 through 10, said names being fictitious and unknown persons, and ABC CORPORATIONS 1 through 10, said names being fictitious and unknown entities,<br><br>          Defendants. | Civil Action No. 21-14409 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

This matter comes before the Court on a motion to dismiss, filed by Defendants Cofina Media, SA ("Cofina Media"), Revista Sabado ("*Sabado*"), Alexandre Jose Ribeiro Malhado ("Malhado"), and Eduardo DeMaso ("DeMaso") (collectively "Defendants"), Plaintiff Caesar DePaco's ("Plaintiff") tort claims for lack of personal jurisdiction.[1]  For the reasons set forth herein, Defendants' motion to dismiss is **GRANTED**; Plaintiff's claims are dismissed without prejudice.

---

[1] This case was originally assigned to Hon. Anne E. Thompson, U.S.D.J., and on April 19, 2022, it was reassigned to this Court.  ECF No. 12.

**I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On or about March 11, 2021, Defendants published an article containing allegedly defamatory statements about Plaintiff in the Portuguese magazine, *Sabado* (the "March Article"). ECF No. 3 ("Am. Compl.") ¶ 11. Defendant Cofina Media, a foreign corporation with its principal place of business in Portugal, is the parent company of *Sabado*, a magazine based in Portugal, which publishes content online via its website and in the form of approximately 70,000 paper copies per week. *Id.* ¶¶ 2, 3, 10. Defendant DeMaso is the director of Cofina Media, and Defendant Malhado is a journalist employed by *Sabado* and the author of the March Article. Both individuals are Portuguese citizens. *Id.* ¶¶ 4-5.

Plaintiff, a New Jersey resident, alleges that the March Article contained numerous false statements about him, including, among other things, that he is the "main financier" of the Chega! Party, a far-right Portuguese political party, which Plaintiff explains "is widely considered to hold xenophobic and racist views." *Id.* ¶ 13(a). The article also states that Plaintiff is a "sympathizer or supporter" of Chega; that Plaintiff engages in criminal activity and illegal forms of intimidation in order to collect debts; that Plaintiff is a "dangerous individual"; and that he hired an individual named Joao Vidal as a "driver" for the purpose of "settling accounts." *Id.* ¶ 13(b)-(g). Plaintiff asserts that these statements, among others that appear in the March Article, are false, misleading, and defamatory. *Id.* ¶ 14. Plaintiff further asserts that Defendants published these statements knowingly or with reckless disregard for the truth, and that as a direct or proximate result of Defendants' actions, Plaintiff suffered substantial harm, including but not limited to "dismissal from his position as Honorary Consul of Cape Verde, tarnished reputation, economic injury, loss of economic advantage, loss of profits, depiction in a false light and damage to public image." *Id.* ¶¶ 26-27.

On August 9, 2021, Plaintiff filed an Amended Complaint asserting claims of defamation and defamation *per se* (Count I); false light (Count II); tortious interference with prospective economic advantage (Count III); and libel and libel *per se* (Count IV). *See generally* Am. Compl. On January 18, 2022, Defendants filed a Motion to Dismiss the Amended Complaint ("Def. Mot.") with prejudice pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. ECF No. 6. Plaintiff filed a Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Opp'n") on February 22, 2022. ECF No. 10. On February 28, 2022, Defendants filed their reply brief ("Def. Reply"). ECF No. 11.

## II.   LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction" over the moving defendants. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). In order "[t]o meet that burden, [plaintiff] must 'establish[ ] jurisdictional facts through sworn affidavits or other competent evidence.'" *Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004)). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (citing *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992)).

"[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc*, 384 F.3d at 97; *see Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003);

*Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 213 (D.N.J. 2020). Still, the plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper." *Cerciello* 563 F. App'x at 925 n.1 (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)).

### III.    DISCUSSION

Defendants moved to dismiss the Amended Complaint for lack of personal jurisdiction, arguing that Plaintiff has not demonstrated that Defendants, Portuguese corporations and individuals, have sufficient minimum contacts with the forum state of New Jersey. Def. Mot. 3–12. In opposition, Plaintiff argues that Defendants committed intentional torts aimed at a New Jersey resident with foreseeable effects in that state such that personal jurisdiction over Defendants is proper. Pl. Opp'n 3–8. In the alternative, Plaintiff requests jurisdictional discovery. Pl. Opp'n 8. I find that this Court lacks personal jurisdiction over Defendants, because Defendants did not expressly aim their allegedly tortious conduct at New Jersey. Further, jurisdictional discovery is not warranted since Plaintiff has not set forth allegations with reasonable particularity indicating the possibility that Defendants have sufficient contacts with the forum state.

#### A. Personal Jurisdiction

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). "[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x. 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). General jurisdiction exists when the defendant's affiliations with the forum state are "so continuous and systematic as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations and quotations omitted). Here, Plaintiff concedes that this Court may not exercise general jurisdiction over Defendants. Pl. Opp'n 3.

Specific jurisdiction exists over a non-resident defendant where the plaintiff's claim "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984)); *see Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" (quoting *Goodyear*, 564 U.S. at 919)). Specifically, courts must assess whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958). A "deliberate targeting" of the forum by the defendant is necessary. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). In other words, the jurisdictional nexus must be the result of intentional conduct by the defendant and not merely "random, fortuitous, or attenuated contacts." *Amberson Holdings LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332, 334 (D.N.J. 2000) (internal quotation marks omitted).

Where, as here, a plaintiff claims to be the target of an out-of-state defendant's allegedly tortious activity, the court's specific jurisdiction inquiry is governed by the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *See Remick v. Manfredy,* 238 F.3d 248, 258 (3d Cir. 2001) ("[T]he Supreme Court set forth the 'effects test' for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum."). In *Calder*, an entertainer residing in California brought a lawsuit for libel against the author and the editor of an article published in the *National Enquirer*. 465 U.S. at 785–86. Both defendants were residents of Florida. *Id.* The Supreme Court held that the defendants could "reasonably anticipate being haled into court" in California because of the "effects" of their conduct in California—namely, the "potentially devasting impact" upon the plaintiff "in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." *Id.* at 789–90; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772–74 (1984) (finding federal court in New Hampshire could exercise personal jurisdiction over nonresident defendant in libel suit where defendant's "contacts with New Hampshire consist of the sale of some 10 to 15,000 copies of *Hustler* magazine in that State each month").

Under the "effects test," the Third Circuit has held that the plaintiff must show: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc*., 155 F.3d at 265–66. Only if the "expressly aimed" element of the test is satisfied will the court consider the other two elements. *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citing *IMO Indus.,* 155 F.3d at 266). A defendant's conduct is "expressly aimed" at the relevant forum if a plaintiff

6

can demonstrate "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 298 (quoting *IMO Indus.*, 155 F.3d at 266). While "a plaintiff's residence is relevant to the 'jurisdictional inquiry,'" "the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants." *Id.* "Jurisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" *Id.* (quoting *Keeton*, 465 U.S. at 780).

Here, the alleged tortious conduct and its purported effects stem from Defendants' publication of an article about Plaintiff on the *Sabado* website, and the weekly paper edition of the magazine distributed in March 2021.² Am. Compl. ¶¶ 10–13. Plaintiff argues that personal jurisdiction is proper under *Calder* based on these alleged distributions of the magazine in New Jersey, and the website's accessibility to New Jersey residents, resulting in harm to Plaintiff in New Jersey. Pl. Opp'n 3–8. More specifically, Plaintiff asserts that Defendants aimed their conduct at New Jersey because (1) he is a resident of New Jersey and the target of the alleged conduct, (2) New Jersey has a notable population of Portuguese-Americans who may be potential readers of *Sabado*, and (3) *Sabado* maintains a website which New Jersey residents may access. *Id.* However, while Plaintiff need only establish a prima facie case of personal jurisdiction, *Miller Yacht Sales, Inc*, 384 F.3d at 97, his bare allegations do not amount to "specific activity indicating that [Defendants] expressly aimed their tortious conduct at [New Jersey]." *Marten*, 499 F.3d at 298. Indeed, Plaintiff fails to establish "jurisdictional facts through sworn affidavits or other competent evidence" that rebut the evidence submitted by Defendants in support of their motion

---

² The Court analyzes Plaintiff's Counts I-IV in tandem for personal jurisdiction purposes as the same allegedly tortious acts underly each of these claims. Am. Compl. ¶¶ 28–65.

7

to dismiss. *Cerciello*, 563 F. App'x at 925 n.1 ("[B]are pleadings alone are insufficient to withstand a motion to dismiss for lack of personal jurisdiction.") (internal quotation marks omitted).

In support of jurisdiction, Plaintiff first asserts that he is "a resident of New Jersey and Defendant published the defamatory information while being fully aware of Plaintiff's residence." Pl. Opp'n 5. However, as noted above, while relevant to the Court's jurisdictional analysis, Plaintiff's residence in the forum state, alone, is insufficient to confer jurisdiction over these nonresident Defendants. *See Marten*, 499 F.3d at 298; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("mere injury to a forum resident is not a sufficient connection to the forum"). Nor is Plaintiff's bare allegation that Defendants were aware of Plaintiff's state of residence sufficient to "demonstrate that [Defendants] *expressly aimed* [their] tortious conduct at the forum." *IMO Indus.*, 155 F.3d at 265 (emphasis in original).

Plaintiff next alleges that "New Jersey is the state with the fourth largest population of Portuguese-Americans," and that among the "77,621 Portuguese-Americans residing in New Jersey" there is potentially "a substantial base for readership," of the *Sabado* magazine. Pl. Opp'n 5. Additionally, with respect to both Cofina Media and *Sabado*, Plaintiff generally alleges that both entities are "doing business in the State of New Jersey." Am. Compl. ¶¶ 2–3. But these conclusory allegations do not speak to specific activity indicating that Defendants targeted New Jersey in any way. Plaintiff does not allege that Defendants actively disseminate the *Sabado* magazine in New Jersey or conduct any specific business in New Jersey. *Cf.* ECF No. 6-2, Declaration of Luis Santana on Behalf of Cofina Media S.A. ("Santana Decl.") ¶ 10. To the contrary, Defendants are corporate entities and individuals based in Portugal, Am. Compl. ¶¶ 2–7, and *Sabado* "is a Portuguese weekly paper magazine," distributed in Portugal. Am. Compl. ¶ 10.

Moreover, the sworn statements of Luis Santana, a member of the Cofina Media board of administration, submitted in support of Defendants' motion, attest that Defendants have never published or disseminated a newspaper in New Jersey, have never transacted business in New Jersey, and have never owned property or assets in New Jersey. Santana Decl. ¶¶ 8–18. Plaintiff's reliance on *Calder* and *Keeton* is therefore unavailing. Pl. Opp'n 5–7. Unlike both *Calder* and *Keeton* where the forum states hosted a significant, purposeful circulation of the defendants' publications, nothing in the record, except Plaintiff's say so, demonstrates that Defendants have any purposeful interaction with the State of New Jersey through the circulation of their magazine or otherwise. *Cf. Calder*, 465 U.S. at 788–80; *Keeton*, 465 U.S. at 772–74. Indeed, the unrebutted record evidence submitted by Defendants indicates the opposite. Santana Decl. ¶¶ 8–18. That Defendant's magazine may have been read by others in New Jersey does not change this result. *See Remick*, 238 F.3d at 259 (holding that allegedly defamatory letter read by individuals in the relevant forum state was not "targeted at them" or the forum state).

Finally, publication of the March Article on the *Sabado* website does not support jurisdiction over Defendants. Am. Compl. ¶ 10; Pl. Opp'n 5. The Third Circuit has repeatedly recognized that "the mere operation of a commercially available [worldwide] web site should not subject the operator to jurisdiction anywhere in the world." *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 211 (3d Cir. 2013) (quoting *Toys "R" US, Inc.*, 318 F.3d at 452–53). Instead, there must be evidence that the defendant "directly target[ed] its web site to the state, knowingly interacting with residents of the forum state via its website." *Id.* (quoting *Toys "R" US, Inc.*, 318 F.3d at 452–53). According to Defendants, the *Sabado* website is available across the world as an informational resource for all those interested. The Court can find no jurisdictional significance in Plaintiff's two unrelated propositions that (1) New Jersey boasts "the fourth largest population

9

of Portuguese-Americans" in the United States, and (2) that *Sabado* maintains a website. Although the Portuguese-Americans in New Jersey may have access to the *Sabado* website, Plaintiff does not allege that Defendants knowingly interact with the Portuguese-American population in New Jersey via the *Sabado* website; rather, Plaintiff simply points out the existence of this group of people in the state. *See Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, (1st Cir. 2022) ("The mere availability of a primarily informational website is not enough—by itself—to render a defendant susceptible to jurisdiction in a particular forum."). Further, by Plaintiff's own allegations, the article in question was published internationally via the *Sabado* website, "not just in [New Jersey]," and it did not target "anyone in [New Jersey] other than [Plaintiff]." *See Remick*, 238 F.3d at 259. Any resulting harm in the forum state was thus "merely incidental," as New Jersey was not "the focal point of the tortious activity." *Id.*; *see Scott v. Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014) ("Even in the context of an intentional tort, random, fortuitous, or attenuated contacts or the unilateral activity of a plaintiff do not establish a basis for personal jurisdiction.") (internal quotation marks and citation omitted).

Because Plaintiff has failed to show specific activity indicating that Defendants "expressly aimed" their allegedly tortious conduct at the forum state of New Jersey, Plaintiff cannot meet the "effects test" set forth in *Calder*. *See Marten*, 499 F.3d at 299. This Court, therefore, lacks personal jurisdiction over Defendants.

### B. Jurisdictional Discovery Is Not Warranted

In the alternative, Plaintiff seeks jurisdictional discovery for the limited purpose of illuminating the "non-Internet minimum contacts existing between Defendants and New Jersey" and, in particular, to show "how many of the more than 77,000 Portuguese American residents of New Jersey subscribed" to Defendants' magazine. Pl. Opp'n 8. The Court denies this request.

"Jurisdictional discovery may be permitted when the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." *Senju Pharmaceutical Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 435 (D.N.J. 2015) (internal quotation marks omitted). "A grant of jurisdictional discovery lies within a district court's discretion," *Murphy*, 503 F. Supp. 3d at 225, and "should be sustained when factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with 'reasonable particularity'" *Senju Pharmaceutical*, 96 F. Supp. 3d at 435 (citing *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

By raising the unsupported notion that a number of Portuguese-American New Jersey residents might subscribe to Defendants' magazine, Plaintiff has not met his burden to put forth reasonably particularized factual allegations regarding the potential existence of requisite contacts between Defendants and New Jersey. In support of his discovery request, Plaintiff points to the Third Circuit's holding in *Toys "R" Us, Inc.*, which reversed the district court's denial of jurisdictional discovery into a foreign toy retailer's non-Internet contacts with the relevant forum state. Pl. Opp'n 7–8. However, there, certain of the defendant's non-Internet contacts were "indicated in various parts of the record," including the defendant's purchase of merchandise from U.S. vendors and two documented sales to New Jersey residents, and thus, the plaintiff's jurisdictional allegations spoke "with reasonable particularity to the possible existence of contacts needed to support jurisdiction." *Toys "R" Us, Inc.*, 318 F.3d at 456–57.

Here, Plaintiff fundamentally misunderstands his burden. It is of no moment whether any Portuguese-Americans in New Jersey read the *Sabado* magazine or website. Rather, Plaintiff has failed to set forth any particularized allegations to rebut Santana's declaration, which plainly attests that Defendants "have never disseminated a newspaper in New Jersey," "have never published in

11

New Jersey," and "do[] not target New Jersey residents." Santana Decl. ¶¶ 10, 11, 18. Nothing in the record here indicates that jurisdictional discovery would reveal that Defendants have the requisite minimum contacts with the forum state to sustain jurisdiction. And, moreover, the Court cannot find any allegations "which, if explored, might provide the 'something more' needed to bring [Defendants] within [its] jurisdiction." *Cf. Toys "R" Us, Inc.*, 318 F.3d at 456 (citation and internal quotation marks omitted). Accordingly, Plaintiff's request for jurisdictional discovery is denied.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**. An appropriate Order shall follow.

DATE: August 24, 2022

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge